# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | |
|---|---|
| KRISSAH E. DICKERSON and KOLTON D. DICKERSON, § § § § Plaintiffs, § § v. § § FLAGSTAR BANK, FSB, § § Defendant. § | Civil Action No. 1:21-cv-00372<br><br>With Jury Demand Endorsed |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs Krissah E. Dickerson and Kolton D. Dickerson ("Plaintiffs"), by and through counsel, for their Complaint against Defendant Flagstar Bank, FSB ("Defendant" or "Flagstar"), state as follows:

### I. INTRODUCTION

1. Defendant engaged in willful, malicious, harassing, deceptive and fraudulent actions against Plaintiffs, consumers, in furtherance of its efforts and scheme to illegally collect on a mortgage loan from Plaintiffs, personally, after they had surrendered the subject real property collateral, filed their Statement of Intention indicating they were surrendering it, and even after the debt was discharged. The foregoing actions are part of Defendant's illegal design, implemented by their policies and procedures, to harass and deceive consumers to pay the discharged debt by misrepresenting to them that they still owed such discharged debt or that they had an obligation to take actions to benefit Defendant financially to their detriment.

2. Plaintiffs claim Defendant violated: 1) the Texas Debt Collection Act (the "TDCA"), Tex. Fin. Code § 392.001 *et. seq*.; 2) the common law tort of invasion of privacy; 3) the automatic stay; and 4) the discharge injunction issued by the United States Bankruptcy Court

for the Eastern District of Texas, Beaumont Division.  Plaintiffs seek to recover from Defendant actual damages, statutory damages, punitive damages, and reasonable and necessary attorney's fees and expenses.

## II. Parties

3. Plaintiffs are natural persons residing in Orange County, Texas and each is a "consumer," as defined in the TDCA, Tex. Fin. Code § 392.001(1).

4. Defendant is a federal savings bank which may be served by delivering citation to its President and CEO, Alessandro P. DiNello, at 5151 Corporate Dr., Troy, Michigan 48098.

5. Defendant is a "creditor," "debt collector," and/or "third-party debt collector," as defined by the TDCA, Tex. Fin. Code §§ 392.001(3), (6) and (7).

6. The debt at issue that Defendant was attempting to collect from Plaintiffs was a "consumer debt" as defined by TDCA, Tex. Fin. Code § 392.001(2).

## III. Jurisdiction and Venue

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1367.

8. Venue in this district is proper because Defendant transacts business in this district, Plaintiffs filed their subject bankruptcy case in this district and the conduct complained of occurred in this district.

## IV. Facts

**A.  Plaintiffs Filed a Chapter 7 Bankruptcy, Surrendered the Collateral Property and Received a Discharge of Their Personal Liability for the Subject Debt.**

9. Prior to Plaintiffs filing their subject Bankruptcy Case, Defendant asserted a pre-petition claim against them in its attempt to collect a consumer debt they allegedly owed on the subject note.  The debt required Plaintiffs to pay money arising out of transactions in which

money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.

10. On January 15, 2020, Plaintiffs filed for bankruptcy under Chapter 7 of the U.S. Bankruptcy Code in case number 20-10019 ("Bankruptcy Case") in the Eastern District of Texas Bankruptcy Court, Beaumont Division ("Bankruptcy Court").

11. Plaintiffs filed Schedules with their bankruptcy petition, listing the debt to Defendant in Schedule D as a secured claim, secured by a lien on Plaintiffs' prior homestead, real property located at 680 Lyndale Street, Vidor, Texas (the "Property") and identified as Account No. xxxxxx9005 (the "Loan" or "Account").

12. A true and correct copy of relevant portions of Plaintiffs' Schedule D is attached hereto as Exhibit "A."

13. With their Chapter 7 Petition, on January 15, 2020, Plaintiffs filed their Statement of Intention for Individuals Filing Under Chapter 7 indicating that they were surrendering the Property, which relieved Defendant from any and all legal duty under any state or federal statute to send Plaintiffs notices concerning the Property other than what was necessary to foreclose their security interest therein.  To the extent Defendant alleges it had to send Plaintiffs loan-related communications pursuant to the Truth in Lending Act, Regulation Z, 12 CFR 1026 ("TILA" or "Regulation Z") wholly fails, as Regulation Z only pertains to sending periodic statements, not all of the types of letters at issue here.  At all relevant times, Defendant was exempt from Regulation Z requirements to send periodic statements to Plaintiffs, according to applicable Regulation Z exemptions pertaining to sending statements on residential mortgage loans to consumers in bankruptcy.  Plaintiffs filed a Statement of Intention which gave notice to Defendant that the Property was to be surrendered.

14. A true and correct copy of Plaintiffs' Statement of Intention is attached hereto as Exhibit "B."

15. On January 18, 2020, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") to Defendant by first class mail. This mailing constituted formal notice to Defendant of Plaintiffs' Bankruptcy Case. This notice warned all creditors, including Defendant, in conspicuous language, against violating the automatic stay pursuant to 11 U.S.C. §362. The United States Postal Service did not return the 341 Notice sent to Defendant, creating a presumption Defendant received the 341 Notice mailed to it by the Clerk of the Bankruptcy Court.

16. On March 15, 2020, Defendant filed an Amended Motion for Relief from Stay as to the Property, and an Order lifting the automatic stay as to the Property to allow foreclosure was entered by the Bankruptcy Court on March 24, 2020.

17. A true and correct copy of the Order Granting Motion for Relief from the Automatic Stay is attached hereto as Exhibit "C."

18. On April 24, 2020, the Bankruptcy Court issued an order granting Plaintiffs a discharge ("Discharge Order") and the debt on the Account and other debts were discharged as to Plaintiff's personal liability. The Discharge Order followed Official Form 318, including the explanatory language contained therein. The Discharge Order discharged Plaintiffs from any liability for the debt created by the Account. Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "Creditors cannot collect discharged debts" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to

collect the debt personally.  Creditors who violate this order can be required to pay debtors damages and attorney's fees."

19. A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "D."

20. On April 26, 2020, the Bankruptcy Noticing Center sent a copy of the Discharge Order to Defendant by first class mail.  This mailing, which was not returned, constituted notice to Defendant of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay of 11 U.S.C. § 362 with the discharge injunction imposed by 11 U.S.C. § 524(a).

21. At no time during the pendency of the Bankruptcy Case did Defendant or any other person or entity object to or dispute the details or completeness of the subject claim on the Account listed on Schedule D to Plaintiffs' Petition filed in their Bankruptcy Case.

22. At no time during the pendency of the Bankruptcy Case did Plaintiffs reaffirm the debt on the Account with any person or entity.

23. At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

**B. During Plaintiffs' Bankruptcy Case and After They Had Surrendered the Property, Defendant Made Harassing Contacts with Plaintiffs and Attempted to Collect the Debt from Them.**

24. While Plaintiffs' Bankruptcy Case was pending and after they surrendered the Property, while the automatic stay was in effect, Defendant contacted Plaintiffs about the Account to coerce or deceive them into making payments on the Account, by calling Plaintiffs and by sending Plaintiffs letters, notices and billing statements.

25. For example, on January 23, 2020, Defendant sent Plaintiffs an email advising them that their monthly statement was available and providing them a link to see the current

monthly statement, even though the Property had been vacated and surrendered. Plaintiffs tried logging into their Account to see the statement, but they had been locked out of the Account.

26. A true and correct copy of the January 23, 2020 email is attached hereto as Exhibit "E."

27. On March 13, 2020, Defendant sent Plaintiffs an email regarding keeping them informed about COVID-19 and providing several links to access their Account online to make payments, check balances and view statements.

28. A true and correct copy of the March 13, 2020 email is attached hereto as Exhibit "F."

29. On April 16, 2020, Defendant sent Plaintiffs a letter demanding they provide proof of hazard insurance on the Property, even though it had been vacated, surrendered and the stay lifted.

30. A true and correct redacted copy of April 16, 2020 letter is attached hereto as Exhibit "G."

31. On several occasions during the bankruptcy, Defendant's employees or agents called Plaintiffs on their cell phone(s) regarding the Account and their intentions, the alleged foreclosure of the Property, offering payment plan options in lieu of foreclosure, asking for payments or other actions to benefit Defendant, even though the Property had been surrendered and Plaintiffs notified Defendant of that in their Statement of Intentions. Plaintiffs objected to these calls and, on numerous occasions, advised the callers of the bankruptcy and automatic stay and asked them not to contact them about the Property or the Account. On at least one occasion, Defendant's representative told Plaintiffs that they could call them because the Property was in foreclosure.

32. Because of this blatant violation of the automatic stay, Plaintiffs' bankruptcy attorney called Defendant to remind them of the bankruptcy and automatic stay. Plaintiffs' attorney wasn't able to make contact immediately but, in a return call, Richard Hogein with Flagstar called back from telephone number (773) 945-9425 and stated that he was aware of the bankruptcy case but, since the stay had been lifted, he could "contact the client all day long if he wanted in order to collect on the property that was about to be in foreclosure."

C. **After Plaintiffs' Bankruptcy was Discharged, Defendant Made Harassing Contacts with Plaintiffs and Attempted to Collect the Debt from Them.**

33. Following the April 24, 2020 entry of the Discharge Order in Plaintiffs' Bankruptcy Case, Defendant engaged in prohibited debt collection activity against Plaintiffs on the Account by calling Plaintiffs and by sending correspondences, notices, and billing statements, to coerce and deceive Plaintiffs into paying on the discharged debt or take actions to financially benefit Defendant to their detriment.

34. For example, on August 4, 2020 at 6:20 p.m., Defendant's representative called Plaintiffs' cell phone from (773) 945-9425.

35. A true and correct redacted copy of a screenshot of Plaintiffs' cell phone activity showing the August 4, 2020 call is attached hereto as Exhibit "H."

36. On October 26, 2020, Defendant sent Plaintiffs an email from "LS Flagstar Loss Drafts" regarding the status of an insurance claim, even though the Property had been surrendered months earlier and the debt discharged.

37. A true and correct redacted copy of the October 26, 2020 email is attached hereto as Exhibit "I."

38. Twice on December 2, 2020 at 12:15 p.m. and 2:53 p.m., Defendant's representative called Plaintiffs' cell phone from (773) 945-9425.

39. A true and correct redacted copy of a screenshot of Plaintiffs' cell phone activity showing the December 2, 2020 calls is attached hereto as Exhibit "J."

40. On January 18, 2021, Defendant sent Plaintiffs an email from "LS Flagstar Loss Drafts" regarding the status of an insurance claim, even though the Property had been surrendered months earlier and the debt discharged.

41. A true and correct redacted copy of the January 18, 2021 email is attached hereto as Exhibit "K."

42. On January 24, 2021, Defendant sent Plaintiffs an advising "Your year-end tax statement has arrived." The email provided several links to Flagstar websites to view the statement, contact Defendant, and manage the account preferences, even though the debt had been discharged. Again, when Plaintiffs tried to log into their Account to view these documents, they were unable as it was either locked or disabled due to the bankruptcy.

43. A true and correct copy of the January 24, 2021 email is attached hereto as Exhibit "L."

44. On February 3, 2021 at 2:37 p.m., Defendant's representative called Plaintiffs' cell phone from (773) 945-9425.

45. A true and correct copy of a screenshot from Plaintiffs' cell phone showing the February 3, 2021 call is attached hereto as Exhibit "M."

46. On March 2, 2021, Defendant sent Plaintiffs an email regarding a casualty loss claim; however, the Property had been surrendered, all checks forwarded to Defendant, and work stopped.

47. A true and correct redacted copy of the March 2, 2021 email is attached hereto as Exhibit "N."

48. On or about March 5, 2021, Defendant sent Plaintiffs an email regarding "Information on Accellion Incident," even though the Account had been discharged a year earlier.

49. A true and correct copy of the March 5, 2021 email is attached hereto as Exhibit "O."

50. On May 22, 2021, Defendant sent Plaintiffs an email advising them that their monthly statement was available and providing them a link to see the currently monthly statement, even though the Property had been surrendered and the debt discharged.

51. A true and correct copy of May 22, 2021 email is attached hereto as Exhibit "P."

52. On or about June 2, 2021, Defendant sent Plaintiffs a lengthy letter offering ways to cure the current default, even though the Property had been surrendered and the debt discharged. The letter urged Plaintiffs to contact Defendant, stating: "We have found that connecting with our customers about options to cure delinquency is more effective than trying to resolve it on your own. Flagstar has a team of assigned personnel available to discuss potential loss mitigation options and answer any questions you may have. PLEASE DON'T DELAY. Call us today to learn more about your options and for instructions on how to apply. The longer you wait, or the further you fall behind on your payments, the harder it will be to find a solution." The letter contained a list of available loss mitigation options, options to leave the property, and included a Flagstar website where Plaintiffs could obtain a loss mitigation application. The letter advised, "WE ARE SENDING THIS NOTICE TO YOU BECAUSE YOU ARE BEHIND ON YOUR MORTGAGE PAYMENT. WE WANT TO NOTIFY YOU OF POSSIBLE WAYS TO AVOID LOSING YOUR HOME." The letter further warned

Plaintiffs, "THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT.  ALL INFORMATION OBTAINED RELATING TO THIS LETTER WILL BE USED FOR THAT PURPOSE."

53. A true and correct redacted copy of June 2, 2021 packet is attached hereto as Exhibit "Q."

54. On June 19, 2021, Defendant sent Plaintiffs an email advising them that their monthly statement was available and provided them a link to see the currently monthly statement, even though the Property had been surrendered and the debt discharged.

55. A true and correct copy of June 19, 2021 email is attached hereto as Exhibit "R."

## V. GROUNDS FOR RELIEF - COUNT I

### TEXAS FINANCE CODE - UNFAIR DEBT COLLECTION

56. Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above as if fully rewritten here.

57. Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

    a) Tex. Fin. Code § 392.301(a)(8) prohibits Defendant from taking an action prohibited by law.  Inasmuch as: 1) the bankruptcy automatic stay and discharge injunction prohibit anyone from attempting to collect debts included or discharged in bankruptcy *in personam*, and 2) the common law protects Plaintiff's privacy rights; Defendant's actions against Plaintiffs violated the TDCA;

    b) Tex. Fin. Code § 392.303(2) prohibits Defendant from collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.  Inasmuch as Defendant demanded Plaintiffs pay for hazard insurance on the Property after it had been surrendered, it violated this section of the TDCA;

    c) Tex. Fin. Code § 392.304(a)(3) prohibits representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the

consumer; inasmuch as Defendant was soliciting Plaintiffs to send Defendant their personal, private and financial information by sending them the loss mitigation packet long after Plaintiffs had surrendered and vacated the Property, Defendant made false representations and solicitations to Plaintiffs to obtain their personal and confidential information to further Defendant's illegal post-discharge collection efforts on the Account;

d) Tex. Fin. Code § 392.304(a)(8), which prohibits Defendant from misrepresenting the character, extent, or amount of the debt at issue or misrepresenting the status of the subject debt in a judicial or governmental proceeding. Defendant made numerous misrepresentations about the debt in its calls, letters and emails to Plaintiffs to coerce payment on the Account, misrepresentations that the debt was still collectable when it was not by virtue of the discharge injunction;

e) Tex. Fin. Code § 392.304(a)(12) prohibits representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges. Since 11 U.S.C. § 362 prohibits Defendant from attempting to collect on the debt on the Account, Defendant's representations to Plaintiffs that they were responsible for hazard insurance related to the Property and Account violated this section of the TDCA; and

f) Tex. Fin. Code § 392.304(a)(19) prohibits Defendant's use of false representations or deceptive means to collect a debt. In addition to the reasons stated in the preceding paragraphs (a-e), Defendant also mispresented that it sent monthly statements for compliance and/or informational purposes when it was aware that Regulation Z exempted Defendant from sending monthly statements post-discharge as Plaintiffs had listed the Property as surrendered in their Statement of Intent. Given that Plaintiffs had agreed to allow Defendant to foreclose, there was no information contained in them that Plaintiffs needed to see. Defendant intentionally tried to coerce or deceive Plaintiffs into paying the debt, while Defendant knew the Account was discharged in Plaintiffs' bankruptcy, rendering the debt legally uncollectible from Plaintiffs *in personam*.

58. Regarding Plaintiffs' claim against Defendant under Tex. Fin. Code § 392.304(a)(8), all of Defendant's misrepresentations made to Plaintiffs about the character, extent or status of the subject discharged debt, were made by design to deceive Plaintiffs into

believing they were still personally liable for the discharged debt, and did in fact cause Plaintiffs to have such belief.  Defendant's misrepresentations made to Plaintiffs that they had an account with Defendant caused and resulted in them thinking differently about the character, extent, amount or status of the subject discharged debt.  After they received their bankruptcy discharge, Plaintiffs believed they were no longer personally liable for the debt on the Account; however, Defendant's misrepresentations at issue, made them think perhaps their bankruptcy attorney made an error, or there was some issue about which they were unaware, that caused the debt to not be discharged in their Bankruptcy Case and they had to pay it.  Defendant's actions in stalking Plaintiffs through calls, emails and letters caused and exacerbated their mental anguish and emotional distress.

59. Under Tex. Fin. Code Ann. § 392.403, Defendant's violations of the TDCA render Defendant liable to Plaintiffs for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees.  Plaintiffs' injuries resulted from Defendant's gross negligence, malice, and/or actual fraud, which entitle Plaintiffs to punitive damages.

60. Due to Defendant's conduct at issue, Plaintiffs were forced to hire counsel and their damages include reasonable attorney's fees incurred in prosecuting their claims.

## VI.  GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY

61. Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above as if fully rewritten here.

62. Defendant's conduct, as described herein, when it called Plaintiffs, sent statements, letters, notices and emails all constituted invasions of Plaintiffs' private affairs.  These invasions were ones that would be highly offensive to a reasonable person because the

debt had been discharged, was uncollectable and Plaintiffs were entitled to fresh start provided by filing bankruptcy. Such wrongful acts caused injury to Plaintiffs which resulted in extreme emotional anguish, loss of time, and damage to their credit and credit worthiness.

63. Plaintiffs injuries resulted from Defendant's malice which entitles Plaintiffs to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VII. GROUNDS FOR RELIEF - COUNTS III & IV

### VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION

64. Plaintiffs repeat, re-allege, and incorporate herein all previous paragraphs above as if set forth herein in their entirety.

65. At all times material to this proceeding, Defendant had actual knowledge of Plaintiffs' Bankruptcy Case and the discharge of the debt at issue in said case.

66. Defendant failed to cease its debt collection activity on the Account and debt at issue when it became aware that Plaintiffs filed for bankruptcy protection and the debt had been discharged in their Bankruptcy Case, as evidenced by Defendant's calls to Plaintiffs and sending Plaintiffs emails, statements and letters to coerce payment from them.

67. Defendant's aforesaid actions were willful acts and constitute efforts to collect discharged debt from Plaintiffs in violation the automatic stay of 11 U.S.C. § 362 and discharge injunction of 11 U.S.C. § 524(a). Defendant's failure to comply with the aforesaid laws, in light of repeated notices from the bankruptcy court about Plaintiffs' Bankruptcy Case, the automatic stay, the discharge of Plaintiffs' debt at issue and the legal effect of the discharge, illustrates its utter contempt for Federal law and the discharge injunction.

68. The actions of Defendant in calling Plaintiffs and misrepresenting that they had a right to contact Plaintiffs since they had gotten the automatic stay lifted to allow them to

foreclose, was a gross violation of 11 U.S.C. § 362 and discharge injunction as set forth in 11 U.S.C. § 524(a)(1)-(3).

69. The facts and background stated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court as they concern the Chapter 7 bankruptcy filed by Plaintiffs. With this prima facie showing, the duty is on Defendant to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability. Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiffs must prevail on their claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiffs. Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

70. Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. § 524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…"

71. No exceptions exist under 11 U.S.C. § 524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the discharge injunction, as stated above.

72. The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or

complaint. None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiffs' Bankruptcy Case as pertaining to the rights and remedies of Defendant.

73. Also, there is no requirement of mitigation on the part of Plaintiffs that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiffs with policing the misconduct of Defendant would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant. No allegation of a mitigation as a defense should be allowed.

74. Plaintiffs have been injured and damaged by Defendant's actions and are entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §§ 362 and 524, and pursuant to the Court's powers under 11 U.S.C. § 105.

### VIII. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

75. Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendant, the principal, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendant for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.

## IX. DAMAGES

76. In addition to any damages previously stated hereinabove, the conduct of Defendant has proximately caused Plaintiffs past and future monetary loss, past and future mental distress, emotional anguish and a discernable injury to Plaintiffs' emotional state, and other damages, evidence for all of which will be presented to the jury. Moreover, dealing with the consequences of Defendant's actions has cost Plaintiffs time and mental energy, which are precious to them.

77. Defendant's actions at issue not only brought back to Plaintiffs all the stress and array of negative emotions they suffered in having to file for bankruptcy, but they were now increased, and a feeling of extreme anxiety and worry, overtook both of them. As a result of Defendant's actions at issue, Plaintiffs suffered an extreme degree of mental anguish and harm. Plaintiffs have suffered a tremendous amount of stress, anxiety, frustration, and anger which reached a level that physically affected them and negatively impacted their day-to-day life causing or exacerbating the frequency and degree of their headaches, stress, anxiety and insomnia, as well as causing Mr. Dickerson to have heart palpitations and Mrs. Dickerson stomach problems. In dealing with the consequences of Defendant's actions, Plaintiffs have had to use their time at work or miss work entirely, causing their work relationships to become strained. Defendant's actions have also caused marital discord and continues to put stress on the marriage as it created uncertainty and a feeling of loss of control over their lives.

78. Defendant continues to deny Plaintiffs the fresh start Congress intended for debtors in the Bankruptcy Code. As Defendant has refused to cease its collection efforts despite Plaintiffs' demand that they honor the discharge, Plaintiffs have become increasingly concerned

that something went wrong with the bankruptcy process and that they may owe the debt which has caused them further anxiety and fear of what may happen to them if they do not pay it.

79. At all relevant times, Defendant knew, and it continues to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally collectible, but Defendant made a corporate decision to act knowingly, willfully, maliciously, and contrary to its knowledge of bankruptcy law, to attempt to collect on the debt it knew had been discharged as a result of Plaintiff's Bankruptcy Case. Defendant had no right to engage in any of its actions at issue.

80. Plaintiffs believe that, after reasonable discovery in this case, they will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiffs with the actual knowledge that such actions were in violation of the law.

81. Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws it is well-aware.

82. Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts discharged in bankruptcy. Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant.

Moreover, Plaintiffs' injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiffs to punitive damages.

83. Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant's actions at issue were part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in the debtors' respective bankruptcy cases.

84. Due to Defendant's conduct, Plaintiffs were forced to hire counsel, and their damages include reasonable attorney's fees incurred in prosecuting their claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Krissah E. Dickerson and Kolton D. Dickerson pray that the Court will:

A. Enter judgment in favor of Plaintiffs and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the TDCA, Plaintiffs' privacy rights, and the automatic stay and discharge injunction;

B. Find that appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C. Award Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

D. Grant such other and further relief, in law or equity, to which Plaintiffs might show them justly entitled.

        Respectfully submitted,

        */s/ James J. Manchee*
        James J. Manchee
        State Bar Number 00796988
        jim@mancheelawfirm.com
        MANCHEE & MANCHEE, PC
        5048 Tennyson Parkway, Suite 250
        Plano, Texas 75024
        (972) 960-2240 (telephone)
        (972) 233-0713 (fax)

        COUNSEL FOR PLAINTIFFS

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

July 19, 2021          */s/ James J. Manchee*
Date          James J. Manchee